UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE J. STOCKLER,

         Plaintiff,

                                Civil Action No. 11-CV-15415

vs.                              HON. MARK A. GOLDSMITH

REASSURE AMERICA
LIFE INSURANCE CO.,

         Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 38) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 27)

### I.  INTRODUCTION

This is a case challenging alleged actions taken under an insurance contract and policy. Plaintiff's amended complaint (Dkt. 13) asserts claims for an accounting (count one); unlawful interest rates on loans taken out under the insurance policy (count three); fraud and misrepresentation (count four); violation of the Michigan Consumer Protection Act, Mich. Comp. L. § 445.901 et seq. (count five); and violation of the Michigan Penal Code, Mich. Comp. L. § 750.1 et seq. (count six).[1]  This matter is before the Court on Plaintiff's motion for summary judgment (Dkt. 27) and Defendant's cross motion for summary judgment (Dkt. 38).  Both motions are fully briefed.  Discovery has been completed.  The Court conducted a hearing on the motions on January 24, 2013.  For the reasons that follow, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment.

_____

[1] The amended complaint also pleaded class action allegations (count two), but those allegations were dismissed without prejudice by an Order of this Court (Dkt. 30).

## II. BACKGROUND

Plaintiff Lawrence Stockler purchased a whole life insurance policy (policy number 3140-685) from Maccabees Mutual Life Insurance Company.  Maccabees Mutual Life Insurance Company Policyowner Service Request, Ex. B. to Def. Mot. at 1-2 (CMECF pagination) (Dkt. 38-3).   It is undisputed that Defendant Reassure America Life Insurance Co. is the successor in interest to Maccabees with regards to this policy.  Pl. Mot. at 2 (Dkt. 27); Def. Resp. at 1 ¶ 2 (Counter Statement of Material Facts) (Dkt. 29).

In 1983, policy 3140-685 was surrendered and the cash value was transferred to a universal life policy.  Policyowner Service Request at 2 of 3 (CMECF pagination), Ex. B to Def. Mot (Dkt. 38-3) (stating "Please transfer values of policy 3140-685 to a UXL policy retaining same face amount of $196,200.").  The Policyowner Service Request was signed by Plaintiff Lawrence Stockler and witnessed by Robert Schechter, and dated September 1, 198_ (the last digit is cut off).  Id. at 3 of 3 (CMECF pagination); Dep. of Robert Schechter at 11, Ex. T to Def. Mot (Dkt. 38-21) (testifying that the service request was dated September 1, 1983).  Robert Schechter was Plaintiff's insurance agent.  Schechter Dep. at 7.  Schechter testified that a "UXL policy" is a type of universal life policy.  Id. at 12.

Schechter also testified regarding the differences between the following types of life insurance policies: whole life insurance; universal life insurance; and term life insurance.  Id. at 9-10.  Schechter testified that "[a] whole life policy has cash reserves. To fund future premiums. A term policy has premiums to reflect only the then current mortality expenses."  Id. at 9.  He further testified that a universal life policy has "elements of cash values and term insurance," and that under a universal life policy, unlike a term policy, the owner has the ability to borrow against the cash value of the policy.  Id. at 9-10.

In a letter to Plaintiff dated August 25, 1983, Debbie Bardsley – who was the office

2

manager for Schechter, Schechter Dep. at 7 – wrote, "In your last meeting with Bob regarding the termination of your Keogh Plan, it was agreed upon that we would transfer the values of your life insurance policy owned by the Keogh Plan to the newly available Maccabees Universal Life policy to be owned by you personally."  Ex. A. to Def. Mot. (Dkt. 38-2).  On November 14, 1983, Debbie Bardsley sent Plaintiff a letter notifying Plaintiff that his policy was transferred from whole life to universal life.  Ex. E to Def. Mot. (Dkt. 38-6).  The policy which Plaintiff was issued in August 1983 was policy number 4016684.  Duplicate Policy at 2 of 18 (CMECF pagination), Ex. D to Def. Mot. (Dkt. 38-5).

The policy provided that "[i]n the event Planned Periodic Premium payments are not continued," insurance coverage under the policy would continue "until the Accumulation Value, less indebtedness, is insufficient to cover the Monthly Expense Charge, as provided in the Grace Period provision."  Duplicate Policy at 14 of 18 (CMECF pagination), Ex. D to Def. Mot. (Dkt. 38-5).  In 2011, Plaintiff received a Payment Notice from Defendant stating that "[p]ayment must be received by the due date shown above or your policy will enter its grace period and will terminate if the renewal premium is not received by the last day of the grace period."  Ex. C to Pl. Resp. (Dkt. 40-1 at 43 of 63 (CMECF pagination)).  On January 30, 2012, Defendant sent Plaintiff a Notice of Policy Termination "due to insufficient cash value to cover the cost of insurance and expenses."  Ex. R to Def. Mot. (Dkt. 38-19).

The policy contained a schedule of benefits and charges.  Duplicate Policy at 7-8 of 18 (Dkt. 38-5).  The schedule lists Plaintiff's age of issue as 52 years old, and lists the annual planned periodic premiums as $2,969.00.  Id. at 7.  The schedule also states, "This policy will lapse at age 79 unless a higher premium is paid."  Id. at 8.  Notices of required payments from 2010 and 2011 show a quarterly premium of $992.25 due in 2010, and a quarterly premium of

3

$1,770.78 due in 2011.  Ex. C to Pl. Resp. (Dkt. 40-1 at 43-44 of 63 (CMECF pagination)).

The policy provided that "[t]he Owner can borrow against this Policy as sole security for any amount up to the Loan Value . . . . Interest will be charged on all policy loans at a rate of 7.4% per year compounded annually and payable in advance."  Duplicate Policy at 14 of 18. Schechter also testified that the owner can borrow against the policy, and that the interest rate was fixed at 7.4%.  Schechter Dep., at 17-18.  Schechter further testified that 7.4% compounded annually is the same as "8 percent at the end of the year."  Id. at 26.  Plaintiff took out two loans on the insurance policy, one in 1990 (Ex. H to Def. Mot (Dkt. 38-9) and one in 1995 (Ex. M to Def. Mot. (Dkt. 38-14)).

The policy loan processing statement sent to Plaintiff for the 1990 loan provides the loan interest rate for a UXL plan as a flat 7.4%.  Ex. H at 3 of 3 (CMECF pagination).  The policy loan processing statement sent to Plaintiff for the 1995 loan states that the interest rate for the loan was 7.4% in advance.  Ex. M.  Annual statements sent to Plaintiff reflect the balance of the loan and the interest accrued on the loan, and state that the interest rate charged on any loan amount was 7.4%.  Exs. I, J, K, L, N, O, P to Def. Mot. (Dkts. 38-10, 38-11, 38-12, 38-13, 38-15, 38-16, 38-17).

In an affidavit attached to his response to Defendant's motion for summary judgment, Plaintiff testified that "there was no written [sic] given as to what the interest rate would be." Affidavit ¶ 2 (Dkt. 40-1).  He further testified that premium payments were made by deducting from the cash reserves.  Id. ¶ 10.  He also testified that in a phone conversation with an employee of Defendant, the employee told Plaintiff that his life insurance policy was a term policy, and the premiums would increase based upon Plaintiff's age.  Id. ¶¶ 12, 14.  Plaintiff testified that "[t]he material statement as to Universal Life being a whole life policy continued by the conversion to

4

the so-called Universal Life policy was false or so recklessly made without the knowledge of the

truth and falsely thereof."  Id. ¶ 15.

### III.  LEGAL STANDARD

The Court construes both Plaintiff's and Defendant's motions as motions for summary

judgment.[2]  Summary judgment should be granted only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  As

the Sixth Circuit has explained,

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure
> materials on file, and any affidavits show that there is no genuine issue as to any
> material fact and that the movant is entitled to judgment as a matter of law." The
> burden is generally on the moving party to show that no genuine issue of material
> fact exists, but that burden may be discharged by "showing-that is, pointing out to
> the district court-that there is an absence of evidence to support the nonmoving
> party's case." In reviewing a summary judgment motion, credibility judgments
> and weighing of the evidence are prohibited. Rather, the evidence should be
> viewed in the light most favorable to the non-moving party. Thus, the facts and

---

[2] In his brief, titled "Plaintiff's Motion for Summary Disposition," Plaintiff cites as applicable
Federal Rules of Civil Procedure 12(b)(6), 12(c), and 56(a).  Pl. Br. for Summ. J. at 3 (Dkt. 27-
4).  Plaintiff also requests "a Judgment on the pleadings, or, summary judgment."  Id. at 13.  As
an initial matter, Fed. R. Civ. P. 12(b)(6) is a defense that may be raised against a complaint to
argue that the complaint fails to state a claim on which relief may be granted, and therefore it is
not  applicable to Plaintiff's motion.

Fed. R. Civ. P. 12(c) provides that a party may move for judgment on the pleadings "after
the pleadings are closed" but "early enough not to delay trial."  However, if on a 12(c) motion,
matters outside the pleadings are presented to the Court, the motion must be treated as one for
summary judgment. Fed. R. Civ. P. 12(d).  If the motion is treated as a motion for summary
judgment, all parties must be given an opportunity to present material pertinent to a summary
judgment motion.  Fed. R. Civ. P. 12(d).

Although Plaintiff does not attach any exhibits to his motion, he supports his argument
with reference to documents submitted to him on discovery.  Pl. Br. for Summ. J. at 4 (Dkt. 27-
4).  Furthermore, Defendant has construed Plaintiff's motion as a motion for summary judgment.
The response is titled "Defendant's Response to Plaintiff's Motion for Summary Judgment," and
Defendant's brief refers to multiple attached exhibits.  (Dkt. 29.)  Therefore, the Court will
consider the exhibits submitted and will construe Plaintiff's motion as a motion for summary
judgment.

Defendant's motion (Dkt. 38), titled "Defendant's Cross-Motion for Summary
Judgment," is also a motion for summary judgment.

any inferences that can be drawn from those facts[ ] must be viewed in the light most favorable to the non-moving party.

Biegas v. Quickway Carriers, 573 F.3d 365, 373-374 (6th Cir. 2009) (citations omitted).

## IV.  ANALYSIS

### A.  Fraud and Misrepresentation Claim

#### 1.  Parties' arguments

Plaintiff's complaint alleges that Defendant made material misrepresentations to Plaintiff regarding the nature of the insurance policy Plaintiff purchased.  Am. Compl. Count 4, ¶¶ 27-35 (Dkt. 13).  Plaintiff argues that "Universal life is not a whole life policy but is a term insurance policy with variable premiums and termination of the policy upon a stated time."  Pl. Rep. at 3 (Dkt. 37-4).  Plaintiff further contends that Defendant materially misrepresented the nature of the policy as a whole life insurance policy, and he seems to argue that this constituted fraud in the inception of the policy.  Pl. Resp. at 7 (Dkt. 40).

Defendant contends that Plaintiff's whole life policy of insurance, which he held before 1983, was terminated in 1983 in order to fund a "universal life" insurance policy (not a "term insurance" policy), and that Plaintiff was fully informed that the cash value of the whole life policy was transferred to a universal life policy.  Def. Resp. at 6-7 (Dkt. 29); Def. Br. for Summ. J. at 4-5 (Dkt. 38).  Defendant further contends that Plaintiff does not identify any allegedly false statements on which he reasonably relied to his detriment in choosing to convert his policy to the universal life policy.  Def. Rep. at 2 (Dkt. 45).

Defendant also raises a statute of limitations defense, arguing that Plaintiff's claim of fraud is barred because the statute of limitations for fraud actions in Michigan is six years.  Def. Resp. at 10-11; Def. Br. for Summ. J. at 8-9.  Plaintiff argues that the Michigan statute of

limitations does not apply to these claims, because federal procedural law governs in diversity cases, and that equitable tolling should be applied to the statutes of limitations for these claims. Pl. Rep. at 1-3 (Dkt. 37-4).  Plaintiff further argues that the Michigan doctrine of fraudulent concealment prevents the statute of limitations from barring Plaintiff's claims.  Id. at 5.  Finally, Plaintiff argues that the increases in premiums in 2010 and 2011 and the phone conversation in 2012 constituted a "continuing tort," which prevents the action from being barred by the statute of limitations.  Pl. Resp. at 9 (Dkt. 40).  Plaintiff contends that "the statute of limitations did not start to run until the summer of 2012 when the policy was cancelled."  Id.

## 2.  Discussion

The Supreme Court has held that if a state statute of limitations would bar a suit in state court, the same action should also be barred in federal court.  In Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 108-110 (1945), the Court stated:

> But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
> . . . .
> Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law.

In a later case, the Court stated:

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

Walker v. Armco Steel Corp., 446 U.S. 740, 753 (1980).  Therefore, if the Michigan statute of limitations would bar Plaintiff's claim, this Court must conclude that the claim is also barred in

federal court, unless a rule of federal procedure controls.

Plaintiff has not pointed to any controlling rule of federal civil procedure; instead, Plaintiff argues that equitable tolling should apply to prevent the statute of limitations from being run. "Equitable tolling . . . permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." E.E.O.C. v. Ky. State Police Dep't, 80 F.3d 1086, 1095 (6th Cir. 1996) (citation and quotation marks omitted).  The federal equitable tolling rules cited by Plaintiff, however, apply to federal statutes of limitation and federal causes of action.  See Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) ("This equitable doctrine [of tolling] is read into every federal statute of limitation."); Tapia-Martinez v. Gonzales, 482 F.3d 417, 423 n.6 (6th Cir. 2007) (citing Holmberg).  Because the claims in this case arise out of state law, the federal equitable tolling doctrine is inapplicable; furthermore, Plaintiff did not raise any arguments premised on the Michigan equitable tolling doctrine.[3]  The Court also notes that, even if the equitable tolling doctrine did apply, Plaintiff has not shown that despite an exercise of due diligence, he was unable to obtain vital information about his claim.  Pertinent information about his claims (including details of the insurance policy and loan interest rates) has been sent to him since 1983.

The Court concludes that the Michigan statute of limitations and Michigan accrual rules apply.  As Defendant stated, the statute of limitations for fraud claims is six years.  Mich. Comp. L. § 600.5813; Blue Cross and Blue Shield of Michigan v. Folkema, 436 N.W.2d 670, 673 (Mich. Ct. App. 1988) ("In actions for fraud or misrepresentation the applicable limitation period is six years.") (citations omitted).

---

[3] In support of his equitable tolling argument, Plaintiff cites the following cases, all of which apply the federal equitable tolling doctrine to federal claims: Smith v. Solis, 390 F. App'x 450 (6th Cir. 2010); EEOC v. Ky. State Police Dep't, 80 F.3d 1086 (6th Cir. 1996); Bailey, Assignee v. Glover, 88 U.S. 342 (1874).

The statute of limitations runs from the time the claim accrues. Mich. Comp. L. § 600.5827. Because Michigan has no statutory provision for accrual of fraud claims, a fraud claim accrues at the time the wrong upon which the claim is based was committed. Mich. Comp. L. § 600.5827 ("The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results."). This statutory scheme precludes the common law accrual doctrine of tolling accrual where the claimant was unaware of any basis for action until after the statute of limitations expired. Trentadue v. Buckler Lawn Sprinkler, 738 N.W.2d 664, 670-671 (Mich. 2007). The Michigan Supreme Court explained:

> Here, as we have explained, the relevant sections of the Revised Judicature Act comprehensively establish limitations periods, times of accrual, and tolling for civil cases. MCL 600.5827 explicitly states that a limitations period runs from the time a claim accrues "[e]xcept as otherwise expressly provided." Accordingly, the statutes "designate specific limitations and exceptions" for tolling based on discovery, as exemplified by MCL 600.5838, 600.5838a, 600.5839, and 600.5855.
> . . . .
> Finally, MCL 600.5855 is a good indication that the Legislature intended the scheme to be comprehensive and exclusive. MCL 600.5855 provides for essentially unlimited tolling based on discovery when a claim is fraudulently concealed. If we may simply apply an extrastatutory discovery rule in any case not addressed by the statutory scheme, we will render § 5855 effectively meaningless. For, under a general extrastatutory discovery rule, a plaintiff could toll the limitations period simply by claiming that he reasonably had no knowledge of the tort or the identity of the tortfeasor. He would never need to establish that the claim or tortfeasor had been fraudulently concealed.

Id. at 671.

The wrong underlying Plaintiff's claim of fraud and misrepresentation is Defendant's alleged misrepresentation of the nature of the insurance policy purchased by Plaintiff. Am. Compl. Count 4, ¶¶ 27-35 (Dkt. 13). Plaintiff purchased the policy in 1983, and count four of the complaint alleges that there were "material misrepresentations of fact made to Stockler that

he was purchasing a whole life Policy . . . . these representations, at the time that they were made, were made as a positive assurance with the intent that Stockler did rely upon such statements and purchased the Policy." <u>Id.</u> ¶¶ 29, 30.  The wrong as alleged by Plaintiff would have been committed in 1983.  Therefore, the fraud and misrepresentation claim is barred by the statute of limitations unless, as Plaintiff contends, there was fraudulent concealment of the claim.

The fraudulent concealment provision states:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Mich. Comp. L. § 600.5855.  However, Plaintiff has not alleged any facts indicating that Defendant fraudulently concealed the existence of this claim.  Plaintiff also has not presented any record evidence indicating fraudulent concealment.  For these reasons, the Court rejects Plaintiff's claim of fraudulent concealment.

Plaintiff also argues that the continuing wrongs doctrine applies to toll the statute of limitations.  Under the continuing wrongs doctrine, "a separate cause of action can accrue each day that [a] defendant's tortious conduct continues."  <u>Horvath v. Delida</u>, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995).  "[A] continuing wrong is established by continual tortious <u>acts</u>, not by continual harmful effects from an original, completed act."  <u>Id.</u> (emphasis in original).  However, the continuing wrongs doctrine only applies in limited circumstances:

> [T]his [continuing wrongs] doctrine has thus far been given only limited application. <u>Id.</u> The doctrine has historically been applied to cases of trespass. <u>See</u> <u>Defnet v. Detroit</u>, 258, 41 N.W.2d 539 (1950). In <u>Sumner</u>, supra at 510, 398 N.W.2d 368, the Supreme Court extended the doctrine to cases involving civil rights claims, and this Court extended the doctrine to claims of nuisance in <u>Moore v. City of Pontiac</u>, 372 N.W.2d 627 (1985). Subsequently, this Court refused to

10

> extend the doctrine to cases involving products liability actions seeking damages for personal injury, see Asher v. Exxon Co., USA, 504 N.W.2d 728 (1993), and in Traver Lakes Community Maintenance Ass'n. v. Douglas Co., 568 N.W.2d 847 (1997), the Court declined to extend the doctrine to negligence claims.

Blazer Foods, Inc. v. Restaurant Properties, Inc., 673 N.W.2d 805, 810 (Mich. Ct. App. 2003).

In Garg v. Macomb County Community Mental Health Servs., 696 N.W.2d 646, 660 (Mich. 2005), the Michigan Supreme Court also rejected the application of the continuing wrongs doctrine in the context of the Michigan Civil Rights Act.  It is unclear whether the continuing wrongs doctrine applies to claims of fraudulent misrepresentation.

Regardless, the Court concludes that Plaintiff's argument lacks merit.  Plaintiff contends that the 2011 and 2012 premium increases, as well as the 2012 phone conversations between Plaintiff and representatives of Defendant, constituted continuing fraud.  The Court first notes that Plaintiff's claim of fraud is premised on allegations that Defendant represented the insurance policy as a whole life policy of insurance, when it was in fact not a whole life policy, and that Plaintiff relied on those misrepresentations in purchasing the policy.   It is not clear how either the premium increases or the statements in the phone conversations constituted additional fraudulent actions.  As Defendant noted, a claim of fraud requires proof that Plaintiff reasonably relied on a false statement or representation, and suffered damages as a result.  See, e.g., Cummins v. Robinson Twp., 770 N.W.2d 421, 435 (Mich. Ct. App. 2009) (listing elements of common law fraud claim).  Plaintiff does not explain how either the premium increases or the 2012 phone conversations constituted false statements on which Plaintiff reasonably relied, nor is there any evidence in the record in regards to this issue.  The Court therefore concludes that the premium increases and phone conversations did not cause Plaintiff's claim to accrue.

For these reasons, Plaintiff's claim of fraudulent misrepresentation is barred by the statute of limitations, and Defendant is entitled to summary judgment on count four.

11

**B.  Claims Regarding Loan Interest Rate**

**1.  Parties' arguments**

Plaintiff argues that Defendant's failure to notify him of the interest rate on his loans violated Mich. Comp. L. § 500.4023.  Pl. Br. for Summ. J. at 3-4 (Dkt. 27-4).  Plaintiff also argues that Defendant's failure to notify violated the following provisions of the Uniform Trade Practices Act in the Insurance Code regarding unfair and deceptive business practices: Mich. Comp. L. §§ 500.2005a, 500.2005, 500.2003.  Id. at 4-5.  Plaintiff contends that the Uniform Trade Practices Act (UTPA) is applicable to any unfair method of competition.  Pl. Resp. at 9 (Dkt. 40).  He argues that a violation of UTPA is an unfair or deceptive business practice.  Pl. Rep. at 5 (Dkt. 37-4).   He also seems to raise an argument based on usury.  He states: "IV. Was there usury based upon the premiums charged and the facts in this matter? A. Was there usury charged.  See MCL 438.31".  Pl. Resp. at 10.

Defendant argues that Mich. Comp. L. § 500.4023 does not apply to the loans at issue, because the loan interest rates did not exceed 8%.  Def. Resp. at 8 (Dkt. 29); Def. Br. for Summ. J at 6 (Dkt. 38).  Defendant also contends that, even if the notice requirements of Mich. Comp. L. § 500.4023 applied to Plaintiff's loans, such requirements would be satisfied because Plaintiff was informed of the interest at the times both loans were taken out.  Def. Resp. at 9; Def. Br. for Summ. J. at 6.  Finally, Defendant contends that Plaintiff's claims regarding violations of the Uniform Trade Practices Act (UTPA) are "misguided" because the UTPA does not provide a private cause of action.  Def. Resp. at 9-10; Def. Br. for Summ. J. at 7-8.

In his reply brief, Plaintiff argues that UTPA is applicable because:

MCL 500.2001 through the end of 2001 series is governed by PA 1976, No. 273, whereas, MCL 500.4023 comes under the Public Act of 1982, No. 427 which is a different act altogether. Thus, the defendant's position that MCL 500.2001 et. seq. is not apropos as MCL 500.4023 was enacted by P.A. 1982, #427 and has a

different Insurance Code Chapter.

Pl. Rep. at 6 (Dkt. 37-4).  Plaintiff also raises several new arguments in his reply brief; he argues that Defendant violated several additional provisions of the Insurance Code: Mich. Comp. L. §§ 500.4026 (requiring life insurance policies to contain a table of loan values and policy options), 500.4032 (requiring a table showing payable installment amounts), 500.4037 (requiring annual status reports).  Pl. Rep. at 5-7.

Finally, at the motion hearing held before the Court on January 24, 2013, Plaintiff raised a new argument.   Plaintiff argues that there was usury because Defendant was "taking out monthly expenses for three months when the monthly expense should only be deducted for one month and if you add this to the use of money, it makes the interest factor . . . almost 8.1 percent which is above the amount . . . allowed."  Hr'g Tr. at 2.  Plaintiff contends that "[Defendant's] Exhibit O is the documentary evidence that supports my claim of . . . over eight percent interest." Id. at 12.

### 2.  Discussion

#### a.  Notice of interest rates

In Michigan, the following provisions regarding notification requirements for insurance policy loan interest rates apply:

> 2) Policies issued on or after the effective date of this section shall provide for policy loan interest rates by 1 of the following:
>
> (a) A provision permitting a maximum interest rate of not more than 8% per annum.
>
> (b) A provision permitting an adjustable maximum interest rate of not more than 18% per annum, which rate is established from time to time by the insurer as provided by this section.
>
> . . . .

13

5) Each insurer which makes a policy loan under subsection (2)(b) shall do all of the following:

(a) Notify the policyholder at the time the loan is made of the initial rate of interest on the loan.

(b) Not less than 30 days before making a change in the interest rate pursuant to subsection (4), notify the policyholder of the change.

(c) Furnish to the policyholder the information provided in subsections (2) and (4).

Mich. Comp. L. § 500.4023. As Defendants contend, this section only requires that an insurer notify the policyholder of the interest rate on the loan when the loan has a provision permitting an adjustable maximum interest rate. The section does not require notification of the interest rate when the maximum interest rate is fixed at not more than 8%.

Defendants have provided evidence establishing that the interest rate on the policy loans Plaintiff took out was fixed at 7.4%. The Duplicate Policy, the loan processing sheets, and the annual statements all list the interest rate at 7.4%. Furthermore, Schechter testified that the 7.4% compounded annually is the same as an 8% rate at the end of the year. Regardless of whether the rate is considered 7.4% or 8%, Mich. Comp. L. § 500.4023(5) would not impose a duty to notify Plaintiff the interest rate. [4]

---

[4] The Court notes that many documents related to Plaintiff's insurance policy – including the policy itself – provide the interest rate for policy loans. See, e.g., Duplicate Policy at 14 of 18, Ex. D to Def. Mot. (Dkt. 38-5); Ex. H at 3 of 3 (CMECF pagination) (Dkt. 38-9); Annual Statements Exs. I, J, K, L, N, O, P to Def. Mot. (Dkts. 38-10, 38-11, 38-12, 38-13, 38-15, 38-16, 38-17). Although Plaintiff stated in his affidavit that "there was no written [sic] given as to what the interest rate would be," affidavit ¶ 2 (Dkt. 40-1), Plaintiff does not dispute that he received these policy documents. Because Plaintiff's factual contention that he received no written notice about the interest rates is contradicted by the written record, the Court need not adopt Plaintiff's contention. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The Court therefore concludes that Plaintiff's affidavit does not suffice to raise a genuine issue of material fact. Furthermore, even if a genuine issue of fact was presented, Defendant has established that

14

The argument that Plaintiff raised for the first time at the motion hearing, contending that the monthly expense charges result in a total interest rate higher than 8%, lacks merit.  As an initial matter, an argument raised for the first time at a hearing or oral argument is not properly before the Court.  See Van Sickle v. Automatic Data Processing, Inc., 952 F.Supp. 1213, 1221 (E.D. Mich. 1997) (summary judgment inappropriate on an issue raised for the first time at a hearing, because the opposing party did not have an opportunity to respond); United States v. Lockett, 359 F. App'x 598, 613 (6th Cir. 2009) (arguments not made in an opening brief are waived); White v. FedEx Corp., No. 04-00099, 2006 WL 618591, at *2 (N.D. Cal. Mar. 13, 2006) ("The Court will not consider any arguments or evidence raised for the first time at the hearing.").

Regardless, the Court has reviewed Exhibit O (Dkt. 38-16), and it does not support Plaintiff's argument.  Exhibit O is an annual statement of insurance policy activity sent to Plaintiff.  It lists monthly expense charges and basic insurance charges, but there is no indication from the document that the expense charges are in any way related to the interest rates charged on the loans.  The Court concludes that the interest rate charged on the loans did not exceed 8%.

Furthermore, the Court need not consider the arguments Plaintiff raised for the first time in his reply brief regarding alleged violations of additional provisions of the Insurance Code. See Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010); Peacock v. Acuity Ins. Co., No. 09-14805, 2010 WL 1814676, at *2 (E.D. Mich. May 6, 2010) ("[S]ince these arguments were raised for the first time in Defendant's reply brief, the Court will not consider them in deciding Defendant's motion as Plaintiffs were given no opportunity to respond to them.").  Regardless, these arguments lack merit: (i) the policy contains a table of calculations used to determine loan

---

the interest rate did not exceed 8%; therefore, Defendant was not required to notify Plaintiff of the interest rate.

values, and options available upon default, in compliance with Mich. Comp. L. § 500.4026 (Dkt. 38-5 at 8, 10, 14 of 18); (ii) the insurance policy did contain a table of proceeds payable, in compliance with Mich. Comp. L. § 500.4032, (Dkt. 38-5 at 9 of 18); and (iii) annual statements were submitted to Plaintiff reporting the policy value and amounts credited or debited to the value, in compliance with Mich. Comp. L. §500.4037.  (Dkt. 38-7.)  Defendant is entitled to summary judgment on Plaintiff's claim of failure to notify.

### b.  UTPA

The Uniform Trade Practices Act, chapter 20 of the Michigan Insurance Code, authorizes the Commissioner of Insurance to stop unfair methods of competition and unfair or deceptive acts or practices.  Mich. Comp. L. § 500.2043.  The Insurance Code provides:

> Every penalty provided for by this code, if not otherwise provided for, shall be sued for and recovered in the name of the people by the prosecuting attorney of the county in which the insurer or the agent or agents so violating shall be situated; and shall be paid into the treasury of said county; such penalties may also be sued for and recovered in the name of the people, by the attorney general, and, when sued for and collected by him, shall be paid into the state treasury.

Mich. Comp. L. § 500.230.  "The provision precludes a private party from recovering penalties specified in the code unless otherwise provided."  Young v. Michigan Mut. Ins. Co., 362 N.W.2d 844, 846 (Mich. Ct. App. 1984) (citation omitted).  "[I]n general, a violation of the Uniform Trade Practices Act does not give rise to a private cause of action."  Isagholian v. Transamerica Insurance Corp., 527 N.W.2d 13, 17 (Mich. Ct. App. 1994) (citations omitted).

Plaintiff does not point to any provision of UTPA that would provide him with a private cause of action, and the Court is not aware of any such provision.  Plaintiff's argument that the different chapters of the Insurance Code were enacted by different public acts is not relevant to the point of whether Plaintiff has a private cause of action under UTPA.  The public acts all amended the same Insurance Code, and Mich. Comp. L. § 500.230 bars Plaintiff from asserting

16

an UTPA claim absent a statutory provision allowing for private causes of action.  Defendant is entitled to summary judgment on Plaintiff's UTPA claim.

### c.  Usury

Finally, Plaintiff seems to assert that the interest rates were usurious under Mich. Comp. L. § 438.31.  This statute states, in pertinent part:

> The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum. This act shall not apply to the rate of interest on any note, bond or other evidence of indebtedness issued by any corporation, association or person, the issue and rate of interest of which have been expressly authorized by the public service commission or the securities bureau of the department of commerce, or is regulated by any other law of this state, or of the United States, nor shall it apply to any time price differential which may be charged upon sales of goods or services on credit.

Mich. Comp. L. § 438.31.  However, the interest rate on policy loans is regulated by the Michigan Insurance Code. See, e.g., Mich. Comp. L. § 500.4023(2) (setting the maximum policy loan interest rate as either 8% fixed per year or 18% adjustable per year).  Therefore, Mich. Comp. L. § 438.31 is inapplicable, and Defendant is entitled to summary judgment on Plaintiff's usury claim.

For the reasons stated above, Defendant is entitled to summary judgment on count three.

### C.  Michigan Consumer Protection Act Claim

Plaintiff argues that "Defendant has violated the Consumer Protection Act as to the facts set forth herein, as well as read together with violations of the Insurance Code."  Pl. Mot. at 13 (Dkt. 27-4).  Plaintiff cites several sections of the Michigan Consumer Protection Act (MCPA) (Mich. Comp. L. § 445.901 et seq.), including: Mich. Comp. L. §§ 445.916, 445.903, 445.911. In response, Defendant argues that "Plaintiff's claim under the Michigan Consumer Protection Act . . . appears to be based on the theory that Defendant was required under the Michigan

Insurance Code to notify him of the interest rate on the loans at the time they were taken out [and] failed to do so."  Def. Resp. at 10 (Dkt. 29).  Defendant argues that because there is no factual or legal basis supporting Plaintiff's claim under the Insurance Code, there is nothing to support his claim under the MCPA.  Id.; Def. Br. for Summ. J. at 8 (Dkt. 38).

The MCPA declares as unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  Mich. Comp. L. § 445.903.  Furthermore, the MCPA provides a private cause of action for violations of the statute:

> (1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:
>
> (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.
>
> (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.
>
> (2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.
>
> (3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:
>
> (a) A method, act, or practice in trade or commerce defined as unlawful under section 3.

Mich. Comp. L. § 445.911.

As Defendant contends, Plaintiff's argument with regards to the MCPA seems to be that because Defendant violated the Michigan Insurance Code by failing to notify Plaintiff of the nature of the insurance policy and the loan interest rate, Defendant engaged in an unfair, unconscionable, or deceptive trade practice in violation of the MCPA.  For the reasons stated above, there is no evidence in the record that Defendant violated the Insurance Code, and

18

Defendant is entitled to summary judgment on that count.  Because Plaintiff's claim under the MCPA is premised on claims that Defendant violated the Insurance Code, Defendant is entitled to summary judgment in regards to the count five.[5]

## V. CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment (Dkt. 38) and denies Plaintiff's motion for summary judgment (Dkt. 27).

There are two remaining counts in the complaint that are not addressed by the motions or briefs: count one (demanding an accounting of payments made by Plaintiff to Defendant as part of the insurance program) and count six (alleging a violation of Mich. Comp. L. §§ 750.3 and 750.4, which preserve civil rights and remedies not affected by the Michigan Penal Code).

These counts do not appear to state a claim for relief.  An accounting is a remedy, not an independent cause of action.  See Roy v. Michigan Child Care Centers, Inc., No. 08-10217, 2009 WL 648496, at *1 (E.D. Mich. Mar. 11, 2009) ("[A]n accounting is a remedy, rather than a separate cause of action."); see also Johnson v. Pullman, Inc., 845 F.2d 911, 913 (11th Cir. 1988) ("Although plaintiffs' complaint contained a count in which an accounting was sought, that relief would not be available here absent some independent cause of action.").  Furthermore, Plaintiff has not pointed to any provision of the Michigan Penal Code that would give him a right to bring a private cause of action under the Code.  See American Postal Workers Union, AFL-CIO,

---

[5] The Court also notes that the cases cited by Plaintiff in this section of his brief are not applicable to the issue of violations of the MCPA.  See Household Intern., Inc. v. Westchester Fire Ins. Co., 286 F. Supp. 2d 369 (D. Del. 2003) (analyzing the New Jersey Consumer Fraud and Deceptive Business Practices Act); Christy v. We the People Forms and Service Centers, USA, Inc., 213 F.R.D. 235 (D.N.J. 2003) (considering whether the New Jersey Consumer Fraud Act applies to the acquisition of a franchise); Ulen Contracting Corp. v. Tri-County Elec. Co-op, 1 F.R.D. 284 (W.D. Mich. 1940) (discussing the legal standard for summary judgment); Kraftsman Container Corp. v. Finkelstein, 461 F. Supp. 245 (D.C.N.Y. 1978) (analyzing a claim of conversion under New York law).

Detroit Local v. Independent Postal System of American, Inc., 481 F.2d 90, 93 (6th Cir. 1973)

("the general rule is that a private right of action is not maintainable under a criminal statute.");

Loud v. Lee Township Election Comm'n, No. 295836, 2011 WL 4104956, at *5 (Mich. Ct. App.

Sept. 15, 2011) (concluding that the plaintiff had no legal basis to assert a cause of action under a

criminal statute that did not expressly create a private cause of action).

Accordingly, Plaintiff is ordered to show cause why count one and count six should not

be dismissed for failure to state a claim.  Plaintiff's memorandum must be filed on or before

March 18, 2013.  Any response by Defendant must be filed on or before March 25, 2013.  Each

memorandum shall not exceed ten pages, exclusive of attachments.

SO ORDERED.

Dated:  March 7, 2013                          s/Mark A. Goldsmith
        Flint, Michigan                        MARK A. GOLDSMITH
                                               United States District Judge

<h3 style="text-align:center">CERTIFICATE OF SERVICE</h3>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 7, 2013.

                                               s/Deborah J. Goltz
                                               DEBORAH J. GOLTZ
                                               Case Manager